METZ, ADM'X, ET AL. V. THE PEOPLE, FOR THE USE OF, ETC.

1. ADMINISTRATION—ALLOWANCE OF CLAIMS.
A creditor of an estate of a deceased person must, in order to preserve his rights, file his claim in the county court having jurisdiction of the estate and have it allowed.

2. SAME.
A claim against an estate may be filed subsequent to adjustment day, but the claimant must give notice to the administrator and have the demand passed on. The absence of the administrator does not excuse a failure to procure an allowance of the claim.

3. SAME.
In the absence of an adjudication and allowance of a claim there can be no establishment of a debt as against an estate, and without this creditors can have no action on the administrator's bond.

4. PARTIES DEFENDANT—MISJOINDER.
One sued as an administrator cannot be joined with other defendants who are sued in their individual capacity.

5. JUDGMENTS.
A judgment against an administrator must be *de bonis testatoris.*

*Appeal from the County Court of Arapahoe County.*

Messrs. FILLIUS & DAVIS, for appellants.

Mr. REUBEN E. ROBINSON, for appellees.

BISSELL, P. J., delivered the opinion of the court.

This suit against the sureties of the administrator of Newman Metz, to compel them to pay a judgment alleged to have been obtained against the decedent, has resulted in a record which abounds in legal informalities and some very significant errors. In March, 1891, Henry Metz, who was the father of Newman, filed a petition in the county court wherein he stated the death of his son, the estimated value of the personal estate, the absence of wife or children, and prayed an appointment as administrator. The petition was granted. He filed a bond in the sum of one thousand dol-

lars, conditioned according to the statute, and letters of
administration were issued. The bond was signed by Rich-
ard Metz and M. Hyman as sureties. Subsequently the
administrator published a statutory notice to creditors, re-
quiring them to present their claims at the May term of the
county court in Arapahoe county on the second Monday of
May. Reid, Murdoch & Co., who are the appellees, took no
steps under the advertisement. In the July following they
filed their claim in the county court, but neither gave nor
undertook to give any notice to the administrator of their
proceeding. The claim, as filed and proved in this suit, was
simply a transcript of the judgment docket. This transcript
contained nothing but the title of the case; its number; a
statement of the judgment debtors, H. Metz and Newman
Metz, partners as H. Metz & Son; the names of the judg-
ment creditors, Simon Reid et al.; and the amount of the
judgment, which was about $740. This account was veri-
fied in Cook county, Illinois, by the affidavit of Simon Reid.
The affidavit simply stated that the annexed account was
just and unpaid. It appeared by the testimony of the claim-
ants' attorney that on some day, but whether before or after
the claim was filed is not made manifest, an inquiry was
made at the residence of Henry Metz, as to his whereabouts.
The attorney was informed by some one that the administra-
tor had gone to Chicago, and was probably living there. It
was conceded the administrator did not file an inventory as
required by section 3557 of the General Statutes of 1883.
During the course of the proceedings, Richard Metz, one of
the sureties, died. Thereupon the plaintiff's attorney moved
to substitute Rachel Metz his administratrix. No objection
was interposed, and an order was entered making Rachel
Metz a party. When the case was submitted, the jury were
directed to find for the plaintiff such damages as they might
conclude he had sustained by reason of the administrator's
failure to file an inventory. They promptly found a verdict
for a sum which happens to be the exact equivalent of the
estimated value of the personal property according to the

administrator's petition. There was no evidence tending to prove that the administrator ever received any money, personal property, or estate of any description which belonged to the decedent. After the rendition of the verdict, judgment was entered against both Rachel Metz and M. Hyman for the amount of the penalty of the bond. The right to collect was limited to the damages assessed by the jury. The entry contained no reference to the capacity in which Rachel Metz defended, and so far as concerns its terms, execution might go against her personally as well as against Hyman, the cosurety.

The whole theory of the plaintiff's case seems to be that the sureties on the administrator's bond can be held for the benefit of any creditor of the estate on the simple proof of a failure of the administrator to file his inventory. There may be some little basis for the contention because of the stringent provisions in sections 3632 and 3633 of the General Statutes of 1883. This legislation permits a recovery on an administrator's bond by any person who may be injured by the conduct of the representative. The enactment is a very broad one, and, in general, provides that any violation of the provisions of the chapter shall be treated as a *devastavit*, and shall entitle the party to maintain his suit. Even though this be conceded to be true in its broad scope, the deduction which counsel makes, that since, on proof of a *devastavit*, the common law made the administrator liable for all claims which the estate owed, therefore he is liable under this statute, is a *non sequitur* in its application to proceedings under our statute. Without specific reference to the sections, it may be said that chapter 95 of our General Statutes has provided a plan for the management of the affairs of the estates of deceased persons. Claims against an estate must be filed in the county court, and they stand in a certain relative order, and are entitled in that order to priority of payment. It is quite as necessary that the alleged creditor should file his claim with the county court, and have it allowed or a judgment passed upon it, as it is that the administrator should do

the things prescribed.   The nonclaim feature of the statute
has received a very rigid construction.   It was recently con-
strued by the supreme court in the case of *Reid v. Sullivan*,
20 Colo. 498, at the last December term, though that case does
not touch this particular feature of it.   Reasoning by analogy
from the doctrine expressed in that decision in an evidently
well considered opinion by Chief Justice Hayt, it is manifest
the creditor must file his claim and have it allowed in order
to preserve his rights.   If he fails, he will be barred from
any share in the distribution, and this whether his claim is
secured or unsecured.   In the present suit the plaintiff proved
the filing of a claim.   He did not file it at the time desig-
nated by the administrator in his notice, nor did he appear
then and ask to have it allowed.   He had the right to file it
subsequently, but then he must give notice to the adminis-
trator, and have his debt passed on.   The absence of the
administrator, if it were proved,—and there was no evidence
of this fact,—does not excuse the creditor from procuring an
allowance of his claim.   The necessity to obtain an adjudica-
tion respecting these claims is apparent from the general pro-
visions of the statute.   The creditor must file his claim in
the usual way, and the court is bound to render a judgment
respecting its validity without further pleading.   The entry
which the court may make has all the force and effect of a
judgment against the estate.   If this were not true, it would
follow that, in a case like the present, a party, without obtain-
ing a judgment against the estate respecting the validity of
his claim, might proceed against the sureties on the bond,
and making no proof respecting the existence, the justness,
or the validity of his claim, obtain satisfaction from the sure-
ties, when neither the principal nor the estate was in any
wise responsible for the debt.   *First Nat'l Bk. of St. Paul
v. How et al.*, 28 Minn. 150.

The gross injustice which might result from the adoption
of any other rule will be made quite manifest from the con-
sideration of the present case.   Reid, Murdoch & Co. filed a
claim in the county court which consisted simply of a tran-

script of the judgment docket. Of the filing they gave no notice to the administrator, and its validity was never passed on. So far as appears from the transcript, the judgment debtors were H. Metz and Newman Metz, partners as H. Metz & Son. This transcript did not establish any liability on the part of Newman Metz. If H. Metz and Newman Metz, copartners as H. Metz & Son, were sued as a firm for a firm liability, and only H. Metz was served, the judgment would simply bind the firm property, and only justify an execution against the personal assets of H. Metz. Under these circumstances, the judgment would in no event be a claim against the estate of Newman Metz, deceased, since the creditor, to establish Newman Metz's liability, must establish a transaction out of which a personal responsibility would arise. This the transcript does not do. If it should be held these creditors might recover without a filing of their claim, they produced no evidence which entitled them to a judgment, for they did not prove that they were creditors of the estate. They should have produced the judgment, and showed that Newman Metz was served, or that he appeared in the action, and that judgment was rendered against him. Again, it might possibly turn out to be true that the claim had been paid by the copartnership, or that Reid, Murdoch & Co. had accepted the responsibility of H. Metz for the debt, and released Newman. It is thus seen that the filing of the claim in the county court proved nothing, and unless there is an allowance and an adjudication, there is no establishment of the debt as against the estate, and no proof of its liability to pay. Without this, how Reid, Murdoch & Co. can recover the amount of their debt from the bondsmen is not easy of apprehension. *The People, etc., v. Hunter et al.*, 89 Ill. 392; *The People, etc., v. Allen*, 8 Brad. 17; *Peveler v. Peveler*, 54 Tex. 53; *Commonwealth v. Wenrick*, 8 Watts, 159.

It is true the *Hunter Case* adjudges that the plaintiff may recover nominal damages where he proves a breach of the bond resulting from a failure to comply with some technical

requirement. That is a case where the plaintiff had a claim against the estate. When he proved a breach, but did not establish that the administrator had gotten any funds, the court held he might recover nominal damages. The present case does not show that Reid, Murdoch & Co. had any claim against the estate of Newman Metz, and although they proved a breach of the bond, it is not easy to see how they acquired any right of action. They are not charged with the duty of seeing that the personal representative properly administers the estate which is intrusted to him. The statute only gives strangers a right to sue on the bond when they have sustained some damage which they show. When the plaintiffs failed to prove that they had a claim against the estate, or that the administrator had received any assets, they failed to estab- lish some of the essential elements of their cause of action. They were not injured by the misconduct of the administra- tor, and consequently there came to them no cause of action on the bond.

We are quite at a loss to understand the proceedings which were taken to make Rachel Metz a party to the suit. It is true counsel made no objection to the entry of the order, and we are probably under no obligations to express an opinion concerning it. Since this suit goes back for a new trial, it seems best to us to make a suggestion of the irregularities which have resulted from this procedure. It seems quite well settled in this state that the code has not changed the common law rule respecting the right to join people who are sued in their individual right with those who are brought in in a rep- resentative capacity. This matter very early received the consideration of the supreme court. *Mattison v. Childs et al.*, 5 Colo. 78; *Lamping v. Keenan*, 9 Colo. 390.

These cases hold that a separate action could be maintained against the survivor, Hyman, or probably a separate action against Rachel Metz, as the administratrix of the deceased surety, Richard Metz. But those cases clearly decide that a joint action cannot be maintained, and that no joint judg- ment can be rendered against them. As the distinction is

very clearly expressed in the first case, if the suit is against Hyman, the judgment would be in reality *de bonis propriis*, and if against the administratrix, it must of necessity be *de bonis testatoris*. In no event could the plaintiff recover against Rachel Metz save in her representative capacity, and then, of course, only to the extent of the estate which may have come to her. The form of the judgment is likewise irregular, and should never have been entered. It runs against M. Hyman and Rachel Metz jointly, is in form a personal judgment, and would warrant the issuance of an execution against the administratrix as well as against the survivor. That such a judgment is bad in form is clearly settled in the *Childs Case*, and the rule should have been observed in the preparation of the entry.

We do not intend by what we have said to adjudge that of necessity there can be no such thing as a judgment or claim against an estate save what may follow from the filing of a statement in the county court and the procurement of a judgment thereon. It might happen that a suit begun against the decedent in his lifetime would be continued as against the administrator after his death, and result in a judgment against the estate which would be as conclusive as any judgment which might be obtained in the county court. What the law would be with reference to such a matter we do not determine. We deem it wise, however, to limit this decision respecting the necessity to file claims in the county court to cases like that at bar. There are numerous provisions in the statute respecting the estates of decedents, and we do not desire to extend our conclusions beyond the necessity of the present inquiry.

The judgment was not warranted by the case made; it is irregular and bad in form, and the case must be reversed and sent back for a new trial.

*Reversed.*